## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **BDI, LLC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 16-CV-0226-CVE-FHM** |
| | ) | |
| **SUMMIT DRILLING COMPANY, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION AND ORDER

Now before the Court is Defendant's Motion for Attorneys' Fees and Costs (Dkt. # 91).

Defendant Summit Drilling Company, Inc. (Summit) asks the Court for an order directing plaintiff

BDI, LLC (BDI) and/or its counsel to pay Summit's attorney fees and costs incurred in this litigation

pursuant to Federal Rule of Civil Procedure 11, 28 U.S.C. § 1927, and the Court's inherent power

to impose sanctions. BDI responds that defendant has failed to comply with Rule 11's safe harbor

provision and its motion is untimely under Rule 54(d). Dkt. # 92. Summit replies that it is not asking

for attorney fees pursuant to Rule 54 and, even if it has failed to comply with Rule 11, the Court may

grant its motion under § 1927 or its inherent power. Dkt. # 95.

## I.

Summit is a drilling company that BDI hired in 2014 to drill an oil well in Richardson

County, Nebraska. Dkt. # 55-1, at 1. The parties entered into a standard drilling contract created by

the International Association of Drilling Contractors (Drilling Bid Proposal and Footage Drilling

Contract - U.S. # 14-2114, revised 2003). See id. The contract provides that:

When operating on a Daywork Basis, [Summit] . . . assumes only the obligations and liabilities stated herein as being applicable during Daywork operations. Except for such obligations and liabilities specifically assumed by [Summit], [BDI] shall be solely responsible and assumes liability for all consequences of operations by both parties while on a Daywork Basis, including results and all other risks or liabilities incurred in or incident to such operations.

Dkt. # 55-1, at 1 (emphasis omitted). The contract also specifies that "[i]n the event the hole should be lost or damaged, while [Summit] is working on a Daywork Basis, [BDI] shall be solely responsible for such damage to or loss of the hole . . . ." Id. at 4. Additionally, the contract states that:

it is the intent of the parties hereto that all releases, indemnity obligations and/or liabilities assumed by such parties under terms of this Contract . . . be without limit and without regard to the cause or causes thereof, including but not limited to . . . any theory of tort, breach of contract, fault, the negligence of any degree or character, . . . or any other theory of legal liability.

Id. at 5.

Summit drilled the well to the depth set out in the contract, but BDI determined that it was likely unproductive and asked defendant to plug the well. Dkt. # 55, at 5; Dkt. # 76, at 5. Approximately a year later, BDI hired a different drilling company to re-open the well by performing a washdown, a procedure for opening a plugged well by drilling through the cement plugs. Dkt. # 55, at 2 & n.1. After drilling through the upper cement plug, the drilling company hit an object that prevented further drilling. Dkt. # 55-2, at 33. After hitting the object, BDI president Mark Crawford sent a text message to Summit employee Scott Miller informing him of BDI's attempted washdown of the well and asking if Miller knew anything about a metal object left in the well. Id. Miller responded:

I understand. I will ask. Shouldn't be anything down that hole other than cement!

I've talked to the guys that are still with us and no one knows of anything dropped down hole. Unfortunately that doesn't mean much at this point. If you do identify the metal, I'd like to know. Especially if it points to us. That's not the reputation I want to have.

Id. at 33-34. After the text message conversation, BDI unsuccessfully attempted to remove the object and complete the washdown. Dkt. # 76-2, at 22-23. The object rendered the well unusable, and BDI later drilled a new hole in the area to replace the inoperative well. Dkt. # 56, at 4.

BDI and Crawford filed this suit against Summit, alleging that Summit left a piece of drilling pipe in the well and asserting claims for breach of contract, negligence, and fraud. Dkt. # 2-2. Summit moved to dismiss Crawford as a party, arguing that he was not the real party in interest. Dkt. # 7. BDI and Crawford did not oppose the motion and agreed to the dismissal of Crawford from the case. Dkt. # 11. After conducting discovery, Summit filed a motion for summary judgment (Dkt. # 55), arguing that BDI's breach of contract and negligence claims were barred by the parties' contract and that BDI had failed to provide sufficient evidence to support its fraud claim. BDI responded that it assumed only reasonably foreseeable risks in the contract, that the contract does not restrain consequential damages in this case, and that questions of fact remained as to Summit's alleged fraudulent misrepresentation. Dkt. # 76, at 10-15. Summit replied that BDI's response was untimely, the contract was valid and enforceable, and no factual disputes existed as to the fraud claim. Dkt. # 85. The same day that Summit filed its motion for summary judgment, BDI filed a partial motion for summary judgment (Dkt. # 56), arguing that Summit presented no evidence showing that the object in the well was not metal and that BDI had satisfied its burden under the doctrine of res ipsa loquitur. Summit responded that res ipsa could not be applied because the well was not in Summit's exclusive control and that it had presented evidence that the object in the well could have originated from at least three other sources. Dkt. # 71, at 17-23. Summit also argued that BDI's motion should

be denied because BDI assumed the risk for damage to the well under the contract. Id. at 16, 23-24. BDI did not file a reply in support of its motion.

The Court entered an opinion and order (Dkt. # 86) granting Summit's motion for summary judgment on all claims and finding as moot BDI's partial motion for summary judgment and three motions in limine. The Court found that BDI's breach of contract and negligence claims were barred by the contract. Under the contract, Summit was working on a daywork basis when it was plugging the well, and BDI unambiguously assumed all liability for the actions of both parties while Summit worked on a daywork basis unless stated otherwise in the contract. Dkt. # 86, at 5. The Court found no contract provision where Summit assumed liability for its work plugging the well. Id. at 5-6. Further, BDI specifically assumed sole responsibility for any damage to or loss of the hole while Summit worked on a daywork basis, including the cost of removing any debris. Id. at 6. The contract also provided that any release or assumption of liability was to be without limit and included any theory of tort or breach of contract. Id. The Court rejected plaintiff's assumption of risk defense because it was inapplicable to this case and the Kansas Supreme Court[1] explicitly abandoned the doctrine in 2013. Id. at 7 n.2. Therefore, based on the contract, the Court granted Summit's motion for summary judgment as to the breach of contract and negligence claims.[2] The Court also granted Summit's motion for summary judgment as to BDI's fraud claim because BDI failed to present evidence that Summit made a false representation with the intent to induce BDI to act upon it. Id. at 10-11.

---

[1]     The parties agreed that, pursuant to a choice of law provision in the contract, Kansas law should apply to BDI's breach of contract and negligence claims. See Dkt. # 86, at 4.

[2]     Although BDI did not argue that the contract was unenforceable, the Court also addressed the enforceability of the exculpatory agreement. See Dkt. # 86, at 7-9.

## II.

Summit argues that it is entitled to all attorney fees and costs incurred because BDI and its attorneys acted in bad faith from the beginning of this litigation. Dkt. # 91, at 4. Summit asserts that the contract explicitly foreclosed BDI's claims and that Crawford was included as a plaintiff when he clearly was not a real party in interest. Id. Alternatively, Summit argues that it is at least entitled to the fees and costs accrued after Crawford's deposition because Crawford admitted in his deposition that Summit was working on a daywork basis when plugging the well. Id. at 5. Summit asserts that Crawford's admission made it indisputable that BDI had no valid claim against Summit and that, by failing to dismiss the case at that time, BDI and its counsel caused Summit to incur additional attorney fees and costs in defense of a frivolous lawsuit. Id. at 5-6. Summit asks for attorney fees and costs accrued during this litigation pursuant to Rule 11, 28 U.S.C. § 1927, and the Court's inherent power to impose sanctions.[3]

## A.

Summit first argues that it is entitled to attorney fees and costs pursuant to Rule 11. Under Rule 11, a party may move for sanctions but, before doing so, it must comply with the Rule's "safe harbor" provision. This provision states that motions for sanctions must be served on the proposed target of sanctions, but not "filed with or presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service." Fed. R. Civ. P. 11(c)(2); see Brown v. Eppler, 794 F. Supp. 2d 1238, 1252 (N.D. Okla. 2011).

---

[3]     The contract contains a provision regarding attorney fees, but it does not apply in this case. See Dkt. # 55-1, at 6 ("If this Contract is placed in the hands of an attorney for collection of any sums due hereunder, or suit is brought on the same, or sums due hereunder are collected through bankruptcy or arbitration proceedings, then the prevailing party shall be entitled to recover reasonable attorney's fees and costs.").

Summit argues that it complied with the safe harbor requirement when Summit's counsel requested in a January 2017 meeting with BDI's counsel that BDI dismiss its case because it was barred by the contract. Dkt. # 95, at 2. However, "the plain language of [Rule 11] requires a copy of the actual motion for sanctions to be served on the person(s) accused of sanctionable behavior at least twenty-one days prior to the filing of that motion." Roth v. Green, 466 F.3d 1179, 1192 (10th Cir. 2006). Summit did not serve BDI with its motion for sanctions at least twenty-one days before filing its motion; therefore, the Court cannot grant its motion under Rule 11.

**B.**

Summit next argues that it is entitled to attorney fees and costs under 28 U.S.C. § 1927, which states:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

"An attorney's actions are considered vexatious and unreasonable under § 1927 if the attorney acted in bad faith." Dreiling v. Peugeot Motors of Am., Inc., 768 F.2d 1159, 1165 (10th Cir. 1985). However, § 1927 does not require a finding of bad faith; "any conduct that, 'viewed objectively, manifests either intentional or reckless disregard of the attorney's duties to the court,' is sanctionable." Hamilton v. Boise Cascade Express, 519 F.3d 1197, 1202 (10th Cir. 2008) (quoting Braley v. Campbell, 832 F.2d 1504, 1512 (10th Cir. 1987)).

Summit argues that it is entitled to attorney fees and costs under § 1927 because the contract clearly foreclosed BDI's claims.[4] The primary flaw with Summit's argument is that BDI's fraud claim was not barred by the contract. Although the contract's exculpatory clause is extremely broad and would likely cover the fraud claim, it would not be enforceable as to that claim. Under Kansas law, "[i]t is a well-settled general doctrine that the law will not sustain a covenant of immunity which protects against fraud." Belger Cartage Serv., Inc. v. Holland Const. Co., 582 P.2d 1111, 1119 (Kan. 1978).[5] This is not a situation where the plaintiff brought and continued to prosecute an entirely frivolous case; this is a situation where the plaintiff brought two precluded claims alongside one valid claim.

In this case, the Court does not find that the actions of BDI's counsel rose to the level of sanctionable under § 1927. To be eligible for sanctions under § 1927, an attorney must multiply litigation "unreasonably and vexatiously." 28 U.S.C. § 1927. "Vexatious" is defined as "intended

---

[4]    In its response, BDI argues against Summit's motion under Rule 11, but does not address § 1927 or the Court's inherent authority to sanction. BDI's Rule 11 arguments are specific to the procedures required to bring a motion under that Rule. BDI also argues that the motion is untimely under Rule 54(d), but sanctions under § 1927 are explicitly exempt from Rule 54(d). Fed. R. Civ. P. 54(d)(2)(e). Surprisingly, BDI makes no defense of its or its counsel's behavior in this litigation.

[5]    There is no doubt that Summit is well aware that the contract could not defeat BDI's fraud claim. Presumably, that is the reason Summit argued in its motion for summary judgment that only BDI's breach of contract and negligence claims were barred by the contract and relied exclusively on BDI's failure to present sufficient evidence to defeat the fraud claim. See Dkt. # 55.

to harass."[6] Vexatious, <u>Merriam Webster's Collegiate Dictionary</u> (10th ed. 1993). Here, there was no harassment because BDI suffered a real injury allegedly caused by Summit and sought relief for that injury by filing a lawsuit that was not completely frivolous. BDI's filing of this lawsuit could not be harassing because it had a legitimate claim, and Summit has failed to show that it was harassed by the addition of two contract claims that arose from the same set of facts. Similarly, the Court does not find that BDI's failure to dismiss its suit or the filing of the partial motion for summary judgment (Dkt. # 56), response to Summit's motion for summary judgment (Dkt. # 76), or three motions in limine (Dkt. ## 52, 53, 54) constitutes a vexatious multiplication of litigation on the part of BDI's counsel. BDI was in pursuit of relief for a real injury, and its counsel's continued championing of two contractually foreclosed claims (alongside one valid claim) was overzealous, not vexatious.

Moreover, Summit's failure to move to the dismiss BDI's breach of contract and negligence claims greatly undermines its argument that BDI acted unreasonably and vexatiously by failing to dismiss its claims. Summit knew from the start that the two claims were barred by the contract, and the Court sees no reason why those claims could not have been disposed of on a motion to dismiss. Summit filed a motion to dismiss Crawford as a plaintiff, and in response BDI voluntarily dismissed Crawford from the case. Yet Summit waited to make its contract argument until after discovery was complete. The parties would have had to conduct much of the same discovery because the fraud

---

[6]     There appears to be some tension between the plain language of § 1927, which requires an attorney to act vexatiously before sanctions may be ordered, and the Tenth Circuit's holding that § 1927 does not require a finding of bad faith. <u>See</u> <u>Hamilton</u>, 519 F.3d at 1202 (finding no bad faith requirement); <u>Braley</u>, 832 F.2d at 1512 (same). The Court believes that the best interpretation of § 1927 under the Tenth Circuit's precedent is that to satisfy the "vexatiously" prong an attorney must intend to harass <u>or</u> act with reckless disregard to the fact that the attorney's actions would harass the other party.

8

claim could not be dismissed under the contract. To the extent there was any discovery conducted

unrelated to the fraud claim, Summit has only itself to blame for failing to move to dismiss the other

claims prior to incurring those discovery costs.

For a court to impose sanctions under § 1927, counsel must multiply litigation

"unreasonably and vexatiously." Because the Court finds counsel for BDI did not act vexatiously,

Summit's motion for attorney fees and costs under § 1927 will be denied. However, the Court's

decision should in no way be viewed as an endorsement of counsel's behavior in this case. Summit

argued that BDI should have known its contract and tort claims were barred when Crawford

admitted Summit had been working on a daywork basis when plugging the well. But it is clear from

the petition that BDI and its counsel knew from the very beginning that the alleged misconduct by

Summit occurred while working on a daywork basis. The petition cites the Summit's duties under

the contract by quoting only to the daywork section of the contract. Dkt. # 2-2, at 5. There was never

any question that Summit was working on a daywork basis, and it is clear that BDI assumed all

liability for damage to the hole while Summit worked on a daywork basis. BDI generally assumed

all such liability unless specifically stated otherwise in the contract, and not only did the contract

include no provision that could conceivably be construed as Summit assuming liability for the

actions underlying the breach of contract and negligence claims, but also in several provisions BDI

specifically assumed liability for damage to the hole. It was unreasonable for any lawyer to read the

contract and think that a contract or tort claim should be brought if the contract were enforceable.

Although it was unreasonable to bring the breach of contract and neglience claims in this

case, claims that fail on their face are not uncommon, and the Court understands that attorneys have

a duty to vigorously advocate for their clients. By asserting the contract and tort claims in this case,

counsel for BDI crossed the line from zealously representing their client to acting unreasonably, but that line can be hazy, and it is understandable for counsel to err on the side of asserting a dubious claim when filing a case. What is much more troubling here is counsel's post-discovery behavior.

BDI's attorneys filed a partial motion for summary judgment (Dkt. # 56) arguing that Summit presented no evidence showing that the object in the well was not metal and that BDI had satisfied its burden under the doctrine of res ipsa loquitur. It would take a stunning lack of awareness on the part of BDI's counsel not to realize that, if the contract were enforced, the arguments made in its motion would be moot. Yet the motion never mentions the contract. The only defense of the breach of contract and negligence claims under the contract made by BDI is in its response to Summit's motion for summary judgment (Dkt. # 76). Summit argued that the breach of contract and negligence claims were barred by the contract, and BDI responded by relying on a legal theory that was explicitly abandoned by the Kansas Supreme Court in 2013 and, even if it had remained good law, was inapplicable to this case. See Dkt. # 86, at 7 n.2. It is clear from these filings that BDI did not have a bad argument to pursue its breach of contract and negligence claims in light of the contractual language — it had no argument, and by filing the documents counsel for BDI acted entirely unreasonably.[7]

This case did not proceed as it should, and while the issues began with BDI asserting two unsupported claims, there is plenty of blame to share. Although BDI should not have brought its breach of contract and negligence claims, Summit could have moved to dismiss them over a year

---

[7]     The behavior of BDI's counsel is particularly unreasonable given that the firm representing BDI is one of the preeminent oil and gas law firms in Tulsa and that the contract between the parties is  an industry standard contract. It appears that failure to supervise a young attorney who submitted virtually all the BDI filings in this case is the primary cause of the unreasonable behavior.

ago when they moved to dismiss Crawford from the case. BDI should not have ignored the contract in its partial motion for summary judgment, but Summit should not have ignored the fraud claim in its motion for attorney fees and costs. And despite the fact that there was plenty of unreasonable behavior on display in this case, none was vexatious. Therefore, Summit's motion for attorney fees and costs under § 1927 will be denied.

## C.

Finally, Summit argues that the Court should grant it attorney fees and costs under the Court's inherent power to issue sanctions. Federal courts have the inherent power to assess attorney fees against a party and/or its counsel for acting "in bad faith, vexatiously, wantonly, or for oppressive reasons." Chambers v. NASCO, Inc., 501 U.S. 32, 45-46 (1991). For the same reasons that the Court will not grant Summit's motion under § 1927, it will not grant it under the its inherent power. Summit was most likely inconvenienced and forced to expend additional funds due to the inclusion of two unsupported claims. However, our legal system follows the "firmly entrenched" principle that each party bears its own litigation expenses, including attorney fees, regardless of who wins. Fox v. Vice, 563 U.S. 826, 832 (2011). A party and/or its counsel must act in an extreme manner for a court to deviate from such a deep rooted norm. BDI was pursuing relief from a real injury that Summit allegedly caused and asserted a viable fraud claim; BDI and its lawyers should proceed more deliberately and with more considered judgment in any future litigation, but the Court will not award sanctions without a showing of vexatious or bad faith behavior.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Attorneys' Fees and Costs (Dkt. # 91) is **denied**.

**DATED** this 20th day of June, 2017.

_Claire V. Eagan_

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE